Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400
Fax: (702) 320-8401
info@rodriguezlaw.com

Richard J. (Rex) Burch
David I. Moulton
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713.877.8788
Fax: 713.877.8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

**ATTORNEYS FOR SMITH & THE DAY RATE WORKERS**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHASE SMITH, individually and on behalf of others similarly situated, <br><br> v. <br><br> LINKAN ENGINEERING, LTD | Case No. _____ <br><br> **COLLECTIVE ACTION COMPLAINT** |

**COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. This lawsuit seeks to recover overtime compensation and other damages for Chase Smith and similarly situated day rate "Plant Operators" and "Engineers" (collectively, "Water Treatment Workers") who work or have worked for Linkan Engineering, LTD ("Linkan").

2. Linkan employed Smith and other Water Treatment Workers to provide water treatment services for Linkan's customers.

3. Smith and other Water Treatment Workers are assigned by Linkan to work on customer sites.

- 1 -

4. They typically work 12 or more hours per day, seven days per week.

5. Smith and other Water Treatment Workers regularly worked more than 40 hours per week for Linkan.

6. Linkan did not pay Smith and other Water Treatment Workers overtime for hours worked in excess of 40 hours in a single workweek.

7. Linkan improperly classified Smith and other Water Treatment Workers as independent contractors and paid them a daily rate with no overtime compensation.

8. Linkan's failure to pay overtime to Smith and other Water Treatment Workers violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

9. Linkan's failure to pay overtime to Smith also violates the Alaska Wage and Hour Act, Art. 3, § 23.10.060 *et seq.* ("AWHA").

10. Smith brings this action on behalf of himself and similarly situated current and former Water Treatment Workers to remedy Linkan's violations of the wage-and-hour provisions of the FLSA.

11. Smith seeks judicial assistance to notify similarly situated employees under 29 U.S.C. § 216(b).

12. Smith also asserts an individual claim for unpaid overtime and other damages under the AWHA.

### JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15. This Court has general personal jurisdiction over Linkan because Linkan is headquartered in Elko Nevada.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Smith's claim occurred in this district.

## THE PARTIES

17. Incorporated in Nevada with its corporate headquarters in Elko, Linkan is a is a global provider of water treatment services for mining and other industrial processes.[1]

18. As part of its services, Linkan staffs Water Treatment Workers, including Smith, to its clients' job sites.

19. Smith is an adult individual who is currently a resident of Alaska.

20. At all relevant times, Smith was an "employee" of Linkan as defined by the FLSA.

21. At all relevant times, Linkan was Smith's "employer" as defined in the FLSA.

22. At all relevant times, Smith was employed by Linkan within the meaning of the AWHA.

23. At all relevant times, Linkan was Smith's "employer" within the meaning of the AWHA.

24. At all times relevant, Linkan has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all times relevant, Linkan had employees that utilize goods, equipment, and/or materials that have moved in interstate commerce.

---

[1] See https://www.linkan.com/about.

26. For example, at all times relevant, Linkan had employees that handle, sell, or work on vehicles, computers, telephones, tools, water treatment equipment, or safety equipment that were produced for interstate commerce or traveled in interstate commerce.

27. At all times relevant, Linkan had an annual gross volume of sales in excess of $500,000.00.

28. Smith files his written consent for with this Collective Action Complaint.

29. Smith brings this action on behalf of himself and all other similarly situated Water Treatment Workers who were paid a day rate and did not receive overtime compensation.

30. The class of similarly situated employees or potential Collective Members sought to be certified is defined as follows:

> **All current and former water treatment Plant Operators and Engineers who provided services to or on behalf of Linkan who were classified as independent contractors and paid a day rate during the last three years ("Collective Members").**

### FACTS

31. Linkan employed Smith from May 2023 to March 8, 2024.

32. Linkan employed Smith in Alaska and North Carolina.

33. Smith was employed by Linkan under two job titles.

34. Smith's job title was "Plant Operator" from May 2023 through November 2023.

35. Smith's job title was "Engineer" from December 2023 to March 2024.

36. Smith's duties as a "Plant Operator" and an "Engineer" were the same.

37. Smith's duties primarily involved repetitive operations with his hands, physical skill, and energy typical of manual or blue-collar work.

38. Smith's duties were to set up, run, and maintain water treatment equipment.

39. For example, Smith ran reverse osmosis machines and maintained them.

40. Smith installed tanks, skirts, and valves.

41. Smith operated heavy equipment.

42. Smith built pipelines for chemicals and frames for chemical spills

43. Smith installed lining in water softeners and pumps.

44. Smith does not have a degree or educational background in engineering.

45. Smith's duties did not require advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized knowledge or instruction.

46. Smith's duties were typical of those performed by the Collective Members.

47. Linkan maintained direct control over Smith's and the Collective Members' day-to-day activities.

48. Linkan's schedules reflect the tasks it assigned to Smith and the Collective Members.

49. Smith and the Collective Members were assigned to job sites by Linkan and supervised by Linkan.

50. Linkan set the hours Smith and the Collective Members were supposed to work.

51. Linkan required Smith and the Collective Members to work approximately 12-hour daily shifts, seven days per week.

52. While on standby in early 2024, Linkan's Lead Engineer told Smith to reduce his schedule to 4-5 hours per day for two weeks.

53. But after two days, Linkan's founder and CEO Sam Billin disciplined Smith for not working 12 hours per day.

54. After that, Smith resumed his normal shifts of about 12 hours per day.

55. Linkan also controlled the tools, personal protective equipment, and certificates Smith and the Collective Members needed to work.

56. Smith and the Collective Members do not incur operating expenses like rent, payroll, or marketing.

57. The services rendered by Smith and the Collective Members are an integral part of Linkan's business of providing water treatment services to Linkan's clients.

58. Despite having substantial custody and control over Smith and the Collective Members and being their employer, Linkan misclassified them as independent contractors to avoid paying overtime compensation.

59. Linkan determined that it would pay Smith and Collective Members a day rate.

60. Linkan determined the amount of Smith's and the Collective Members' day rates.

61. Linkan decided to not pay Smith and the Collective Members' overtime pay.

62. Linkan paid Smith and the Collective Members a day rate with no overtime premium for hours worked in excess of 40 in a workweek.

63. Linkan failed to pay Smith overtime premium for hours worked in excess of 8 hours in a day or 40 in a workweek when he worked in Alaska.

64. Linkan paid Smith and the Collective Members on a day rate basis.

65. Linkan did not guarantee Smith or the Collective Members a preset weekly amount.

66. Linkan did not pay Smith or the Collective Members a weekly salary.

67. Instead, Smith and the Collective Members work for Linkan under Linkan's day rate pay scheme.

68. Linkan paid Smith and the Collective Members the number of days they worked in each pay period times the number of days they worked.

69. Smith's day rate was $725 per day for days he worked.

70. Smith's day rate was $362.50 for travel days.

71. Linkan did not record the number of hours Smith and the Collective Members worked.

72. Linkan's records show the days Smith was scheduled to work and travel.

73. Linkan's records also show the number of days Smith actually worked and traveled.

74. During the period January 1 to January 7, 2024, for example, Smith worked 5 days and traveled 1 day.

75. During the period January 1 to January 7, 2024, Linkan paid Smith 5 days at $725 per day and 1 day at $362.50 per day.

76. During the period January 1 to January 7, 2024, Smith worked at least 60 hours or more.

77. During the period January 1 to January 7, 2024, Smith was entitled to at least 20 hours paid at 1.5 times his regular rate of pay, but Linkan only paid Smith his day rate pay, without any overtime pay.

78. Smith and the Collective Members do not receive overtime pay.

79. This is despite the fact that Smith and the Collective Members often work more than 40 hours in a workweek.

80. Indeed, Smith and the Collective Members often work 12 hours or more per day, seven days per week.

81. Smith's work schedule is typical of the Collective Members.

82. Linkan knew Smith and the Collective Members worked more than 40 hours in a week.

83. Linkan knew that its level of control over Smith and the Collective Members was that of an employer.

84. Linkan knew that it could not control Smith and the Collective Members' job duties, tasks, hours, and pay without incurring the responsibility of an employer to pay overtime.

85. For example, Linkan knew it was inconsistent with independent contractor status to control Smith's hours and methods of work.

86. Despite this knowledge, however, Linkan did control Smith's and the Collective Members' hours and methods of work.

87. Linkan knew the FLSA requires overtime pay to employees paid a day rate, yet it chose to not pay overtime.

88. Linkan knew labeling Smith and the Collective Members as "independent contractors," did not absolve it of liability for overtime pay under the FLSA.

89. Linkan knew Smith and the Collective Members were economically dependent upon Linkan for their work.

90. Linkan knew, or showed reckless disregard for, whether Smith and the Collective Members were entitled to overtime under the FLSA.

91. Nonetheless, Linkan failed to pay Smith and the Collective Members overtime.

92. Linkan willfully violated the FLSA.

### FLSA VIOLATIONS

93. By failing to pay Smith the Collective Members overtime at one-and-one-half times their regular rates, Linkan violated the FLSA's overtime provisions. *See* 29 U.S.C. §§ 201 *et seq.*,

94. Because Linkan knew, or showed reckless disregard for whether, its pay practice violated the FLSA, Linkan owes these wages for the past three years.

95. Linkan owes Smith and the Collective Members an amount equal to the unpaid overtime wages as liquidated damages.

96. Smith and the Collective Members are entitled to recover all reasonable attorneys' fees, costs, expenses, and interest.

### AWHA VIOLATIONS

97. Smith brings this claim under AWHA.

98. Smith worked for Respondent in Linkan in Alaska.

99. The conduct alleged violates AWHA (Alaska Wage and Hour Act, Art. 3, § 23.10.060 *et seq*).

100. The AWHA requires employers like Respondent to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week or eight (8) in a day.

101. Smith is entitled to overtime pay under the AWHA, attorneys' fees, costs, expenses, and interest.

## RELIEF SOUGHT

102. WHEREFORE, Smith seeks relief against Linkan as follows:

 i. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

 ii. Judgment pursuant to Section 16(b) of the FLSA finding Linkan liable for unpaid back wages due to Smith and the FLSA Collective Members and for liquidated damages equal in amount to their unpaid compensation;

 iii. Judgment under the AWHA for unpaid overtime and liquidated damages;

 iv. Judgment awarding attorneys' fees, costs, expenses, and pre- and post-judgment interest; and

 v. All such other and further relief as may be necessary and appropriate.

| | | |
|---|---|---|
| 1 | Dated: October 15, 2025. | Respectfully submitted, |
| 2 | | **RODRIGUEZ LAW OFFICES, P.C.** |
| 3 | | By: /s/ *Esther Rodriguez* |
| 4 | | Esther C. Rodriguez<br>Nevada State Bar No. 006473 |
| 5 | | 10161 Park Run Drive, Suite 150<br>Las Vegas, Nevada 89145 |
| 6 | | Tel: (702) 320-8400<br>Fax: (702) 320-8401 |
| 7 | | info@rodriguezlaw.com |
| 8 | | Richard J. (Rex) Burch*<br>David I. Moulton* |
| 9 | | **BRUCKNER BURCH PLLC** |
| 10 | | 11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046 |
| 11 | | Phone: 713-877-8788<br>Fax: 713-877-8065 |
| 12 | | rburch@brucknerburch.com<br>dmoulton@brucknerburch.com |
| 13 | | |
| 14 | | *Pro hac vice applications forthcoming* |
| 15 | | **ATTORNEYS FOR SMITH AND THE WATER TREATMENT WORKERS** |

# EXHIBIT 1

## CONSENT TO JOIN WAGE CLAIM

Printed Name: **Chase Smith**

1. I hereby consent to join the collective action lawsuit filed against Linkan Engineering to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and I consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at BRUCKNER BURCH PLLC as my attorneys to prosecute my wage claims.

4. I consent to having Plaintiff's Counsel make all decisions regarding the litigation, including all decisions regarding settlement or trial, the terms of settlement and release of claims, and agreements regarding attorney fees and costs.

5. If needed, I authorize the Plaintiff's lawyers to use this consent to re-file my claim in a separate lawsuit or arbitration against the Defendant.

Signature: *Chase Smith*

**Bruckner Burch PLLC**
**11 Greenway Plaza, Suite 3025**
**Houston, Texas 77046**
**Phone: (713)-877-8788**
**Fax: (713) 877-8065**
**E-mail: consents@brucknerburch.com**