1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10   CHASE SMITH, individually and on behalf of          Case No. 3:25-cv-00579-ART-CSD
     others similarly situated,

11
                    Plaintiff,                           **ORDER GRANTING**
12
                                                         **STIPULATION REGARDING**
            v.                                           **AGREEMENT TO ARBITRATE**
13
     LINKAN ENGINEERING, LTD.,
14
                    Defendant.
15

16

17         Defendant Linkan Engineering, Ltd. ("Linkan") and Plaintiff Chase Smith ("Mr. Smith"),

18   through their respective undersigned counsel, stipulate and agree as follows:

19         1.      On December 5, 2025, Linkan filed a Motion to Compel Arbitration and Dismiss, or

20   Alternatively Stay the Action (ECF Nos. 13, 14) (together, the "Arbitration Motion") under identical

21   arbitration provisions set forth in Independent Contractor Agreements dated April 24, 2023 and

22   October 2, 2023 that Mr. Smith executed.

23         2.      The arbitration provision in the Independent Contractor Agreements provided:

24         **APPLICABLE LAW/ARBITRATION** This Agreement shall be governed by and
           construed and enforced in accordance with the laws of the State of Nevada. Any
25         claim or controversy arising out of, or relating in any way to, this Agreement or to
           the breach thereof, which cannot be resolved by the parties or their legal
26         representatives in good faith discussions shall be determined exclusively by
           mandatory, binding arbitration conducted in Elko, Nevada pursuant to the Nevada
27         Uniform Arbitration Act of 2000 (NRS 38.276 et seq. – the "Act"). In the event any
           such dispute is not first resolved between them, the Parties shall by agreement select
28         one (1) person as arbitrator who has substantial experience in the area(s) of the

disputed issue(s). If they cannot agree upon an arbitrator, either party may apply Page 4 pursuant to NRS 33.226 to the Third Judicial District Court of the State of Nevada in Elko County to appoint an arbitrator. The arbitrator shall have all of the powers set forth in the Act and shall enter an award at the conclusion of the proceedings, including an award of reasonable attorney's fees and costs to the prevailing party. In no event, however, may the award include any tort or punitive damages. The arbitrator's fee and the cost of the proceeding itself may be divided equally between the parties or the arbitrator may award all or any part of the fee and cost of the proceeding to either party in his/her discretion.

*See* April 24, 2023 Independent Contractor Agreement, attached hereto as Exhibit 1 at ¶ 10; October 2, 2023 Independent Contractor Agreement, attached hereto as Exhibit 2 at ¶ 10.

3.    After Linkan filed the Arbitration Motion, the parties reached an agreement to arbitrate this action on certain modified terms.

4.    Specifically, the parties agree to amend and replace paragraph 10 of the operative Independent Contractor Agreement(s) as follows:

**APPLICABLE LAW/ARBITRATION**. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Nevada. Any claim or controversy arising out of, or relating in any way to, this Agreement or to the breach thereof, which cannot be resolved by the parties or their legal representatives in good faith discussions shall be determined exclusively by mandatory, binding arbitration conducted in Las Vegas, Nevada.  Arbitration will be governed by and proceed pursuant to the Federal Arbitration Act, and be administered by JAMS under the JAMS Employment Arbitration Rules & Procedures.  The arbitrator shall have all of the powers set forth in the Act and shall enter a written reasoned award at the conclusion of the proceedings, in accordance with applicable law.

The arbitrator shall award reasonable attorneys' fees and costs to the prevailing party, except with respect to claims based on any federal or state statute which provides for the award of fees and costs to a prevailing party. In such circumstances, the federal or state statute which provides for the award of fees and/or costs for the statutory claims shall govern.

(the "Amended Arbitration Provision").

5.    Additionally, Linkan agrees to pay for the costs of arbitration with Mr. Smith (i.e., administrative fees and arbitrator's fees). However, Mr. Smith shall remain responsible for any initial filing fee for the arbitration, up to the amount that Mr. Smith would be required to pay for similar filing fees in court.

6.    The Amended Arbitration Provision shall only be applicable in this action and arbitration proceeding and shall not be used in or submitted as evidence in any other action or proceeding to suggest unenforceability of the arbitration provision.

7. Based on the foregoing, the parties agree that this action shall be dismissed based on this stipulation to arbitrate the parties' claims under the Amended Arbitration Provision. As a result, Linkan's Motion shall be deemed mooted by this agreement between the parties upon entry of this Stipulation and Order Regarding Agreement to Arbitrate.

IT IS SO STIPULATED.

Dated this 18th day of December, 2025.

McDONALD CARANO LLP

By: __/s/ Kristen T. Gallagher__
Kristen T. Gallagher (NSBN 9561)
Daniel I. Aquino (NSBN 12682)
Zachary D. Besso (NSBN 16200)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100

*Attorneys for Defendant Linkan
Engineering, Ltd.*

RODRIGUEZ LAW OFFICES, P.C.

By: __/s/ Esther C. Rodriguez__
Esther C. Rodriguez (NSBN 6473)
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 320-8400
info@rodriguezlaw.com

Richard J. (Rex) Burch
David I. Moulton
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713.877.8788
Fax: 713.877.8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

*Attorneys for Plaintiffs*

**ORDER**

Based on the parties agreement that this action shall be dismissed based on this stipulation to arbitrate the parties' claims under the Amended Arbitration Provision, the stipulation is granted. Accordingly, the Clerk of Court shall close this case.

Anne R. Traum
United States District Judge

DATED: December 22, 2025

3

# Exhibit 1

April 24, 2023 Independent Contractor Agreement



**INDEPENDENT CONTRACTOR AGREEMENT**

This Agreement entered into effective this 24 April 2023 (the "Effective Date") and is executed by and between Linkan Engineering Ltd, a Nevada professional corporation (the "Company"), and Chase Smith ("Contractor") and is based on the following facts:

A.      Company provides professional engineering services to mining companies. Company has a need for an experienced water treatment plant operator to supervise a temporary water treatment plant for one of its clients.

B.      Contractor is trained in providing such services and is knowledgeable in the services Company requires for this particular job and client; and

C.      The parties desire to enter into this Agreement in order to set forth their respective rights and duties and to provide a full statement of the Contractor's responsibilities.

D.      This engagement letter is valid through end of business on: October 31, 2023

NOW, THEREFORE, in consideration of the mutual promises and covenants of the parties as herein contained, the parties hereto agree, and contract as follows:

1.      SERVICES PROVIDED

The services to be provided by Contractor are set forth on Exhibit A, which is attached hereto and is incorporated herein by reference and which services are referred to herein as the "Services."

2.      ASSIGNMENT

Company and Contractor agree that they are entering into this Agreement due to the Contractor's specialized skill and knowledge regarding the Services. Accordingly, performance of the Services is non-assignable and personal to the Contractor.

3.      CONSIDERATION

As consideration for this Agreement, Company agrees to pay Contractor in accordance with the fee schedule set forth in Exhibit B attached hereto and incorporated herein by reference. Contractor agrees to accept the fees referenced in Exhibit B as full and complete payment for all services rendered on behalf of Company.

4.      TERM

This Agreement shall continue in effect for the period necessary for Contractor to provide the Services to Company's client unless terminated sooner pursuant to the provisions of this Agreement.

5.    <u>TERMINATION</u>

A.    Termination without Cause. This Agreement is terminable without cause by either party upon twenty-one (21) calendar days prior written notice to the other party.

B.    Termination for Cause. Either party shall have the right to immediately terminate this Agreement at any time, upon five (5) days prior written notice of the occurrence of any material breach of this Agreement. If the breaching party fails to cure the material breach within the five (5)-day notice period, this Agreement shall automatically terminate at the end of the five (5)-day notice period, notwithstanding any other provision in this Agreement.

C.    Client Rejection of Contractor. The Independent Contractor is being hired to provide services to the Company's mining clients. In the event that Client deems Contractor's services are not needed, the Contractor is not qualified for the work, the Contractor fails Client-required drug testing, or the Contractor has violated Client "Cardinal Rule" safety protocols, the Contractor may be terminated for cause immediately.

6.    <u>INSURANCE</u>

Contractor will be covered by Company's workers compensation insurance as required by Nevada law for any injury incurred by Contractor while providing the Services for Company's clients.

7.    <u>INDEPENDENT CONTRACTOR</u>

In the performance of the work, duties, and obligations of Contractor under this Agreement, it is mutually understood and agreed that Contractor shall at all times be acting and performing as an independent contractor. Nothing in this Agreement shall be construed to create a principal-agent, employer-employee, or master-servant relationship.

The Company enters into this Agreement based on Contractor's demonstrated ability to accomplish the objectives described herein. Contractor shall not be eligible to participate in any benefit programs that the Company now or hereafter maintains for its employees and, to the extent Contractor was to become eligible to participate in any such benefit program, Contractor hereby waives any such right. The parties agree that the relationship between the parties is that of an independent contractor for all purposes and not employer and employee.

Company will not reimburse Contractor for any expenses incurred by Contractor in connection with the performance of Services hereunder, except as otherwise agreed to by Company.

For all purposes, including, but not limited to, Medicare and Social Security taxes, the Federal Unemployment Tax Act (FUTA), income tax withholding and any and all other federal, state, and local laws, rules, and regulations Contractor, shall be treated as an independent contractor and not as an employee with respect to Company.



8.    CONFIDENTIAL, PROPRIETARY AND PERSONNEL INFORMATION

Contractor shall maintain in strict confidence and shall use and disclose only as authorized by Company, all information of a confidential or competitively sensitive or proprietary nature or concerning any of Company's business that Contractor receives in connection with the performance of Services. Company shall take reasonable steps to identify for the benefit of Contractor any information of a competitively sensitive or proprietary nature, including by using confidentiality notices in written material where appropriate.

The restrictions described in this Section shall not be construed to apply to (1) information generally available to the public; (2) information released by Company generally without restriction; (3) information independently developed or acquired by Contractor without reliance in any way on other protected information of Company; or (4) information approved for the use and disclosure of Contractor without restriction. Notwithstanding the foregoing restrictions, Contractor may use and disclose any information to the extent required by an order of any court or other government authority or as necessary to protect their interest in this Agreement, but in each case only after Company has been so notified and has had the opportunity to obtain reasonable protection for such information in connection with such disclosure.

Non-Solicitation of Customers and Employees**.** Contractor agrees and for 12 months after my contract termination, I will not directly or indirectly, on behalf of myself or in conjunction with any other person or entity: solicit or accept business from any Linkan Engineering Customer.

Contractor agrees not to hire, solicit, recruit, induce, or attempt to hire, solicit, recruit, or induce any employee or independent contractor of the Company, who worked for the Company during the 6 months preceding my employment termination, to work for me or my new employer.

9.    INDEMNIFICATION

The parties hereby indemnify and agree to hold each other harmless from and against any and all claims, demands, and actions, and any liabilities, damages, or expenses resulting therefrom, including court costs and reasonable attorney fees, arising as a result of its own negligence or wrongdoing. Each party agrees to give the other party prompt notice of any such claim, demand, or action and shall, to the extent such party is not adversely affected; cooperate fully with the other party in defense and settlement of said claim, demand, or action.

10.    APPLICABLE LAW/ARBITRATION

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Nevada. Any claim or controversy arising out of, or relating in any way to, this Agreement or to the breach thereof, which cannot be resolved by the parties or their legal representatives in good faith discussions shall be determined exclusively by mandatory, binding arbitration conducted in Elko, Nevada pursuant to the Nevada Uniform Arbitration Act of 2000 (NRS 38.276 *et seq.* – the "Act"). In the event any such dispute is not first resolved between them, the Parties shall by agreement select one (1) person as arbitrator who has substantial experience in the area(s) of the disputed issue(s). If they cannot agree upon an arbitrator, either party may apply



pursuant to NRS 33.226 to the Third Judicial District Court of the State of Nevada in Elko County to appoint an arbitrator. The arbitrator shall have all of the powers set forth in the Act and shall enter an award at the conclusion of the proceedings, including an award of reasonable attorney's fees and costs to the prevailing party. In no event, however, may the award include any tort or punitive damages. The arbitrator's fee and the cost of the proceeding itself may be divided equally between the parties or the arbitrator may award all or any part of the fee and cost of the proceeding to either party in his/her discretion.

11.    <u>MISCELLANEOUS</u>

      A.    Sections 6 through 10 shall survive the termination of this Agreement.

      B.    This Agreement shall constitute the entire written agreement between the parties and shall supersede any and all agreements or understandings in effect between the parties hereto. This Agreement may not be amended or modified except by written agreement executed by both parties.

      C.    If any provision of this Agreement is found, held, or deemed to be void, unlawful or unenforceable under any applicable statute or other controlling law, the remainder of this Agreement shall continue in full force and effect.

      D.    In any legal action, arbitration, or other proceeding brought to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

      E.    No breach of any provision hereof can be waived unless in writing. Waiver of any breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same, or any other provision.

      F.    Any notice required or permitted under this Agreement shall be in writing and sent to the other party by first class mail at the address provided below, or to such other address as a party hereto may specify in writing.

      G.    Contractor acknowledges that Contractor has had the opportunity to consult legal counsel in regard to this Agreement, that Contractor has read and understands this Agreement, that Contractor is fully aware of its legal effect, and that Contractor has entered into it freely and voluntarily and based on Contractor's own judgment and not on any representations or promises other than those contained in this Agreement.

      H.    This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same instrument.

[signature page to follow]



**LINKAN ENGINEERING, LTD.**

Date: April 24, 2023                By:

Quinn Westmoreland, President
2720 Ruby Vista Dr. Suite 101
Elko NV. 89801

**CONTRACTOR**

Date: April 24, 2023                By: _____

Chase Smith



**EXHIBIT A**
(SERVICES)

Contractor will provide the following services under this contract:

1. Contractor will provide services as a water treatment plant operator in accordance with Company's contract with Red Dog Mine.
2. Contractor will fulfill the rotating assignment to operate the water treatment plant on (12 hours per day) 21 days on / 21 days off at Red Dog Mine Alaska. Contractor acknowledges that they are on a team of four operators working coordinated schedules to provide 24/7/365 coverage to the plant. Coordination with other independent contractors will be required to provide the coverage needed.
3. Contractor hours are in accordance with Red Dog's manpower agreements – 21 full 12-hour days. Extra time outside of the 12-hour shift may be required to accommodate client safety/daily meeting requirements and any emergencies that might arise with the plant.
4. Perform assignments as requested by Water Supervisor
   a. Generating required reports and required inspections.
   b. Track all operational parameters and issue regular reports to the Linkan Project Manager.
   c. Communicating with all levels of Linkan management and personnel.
   d. Knowledge of proper chemical handling.
   e. Monitoring plant conditions: formulating and implementing adjustments based on scaling components to protect plant equipment.
   f. Identifying and mitigating hazards.
   g. Anticipate, plan, and execute preventative maintenance on plant equipment.
   h. Interface daily with Red Dog personnel.
   i. Execute all work in compliance with MSHA safety requirements.
   j. Assure that work is completed in accordance with approved Standard Operating Parameters (SOPs).
   k. Performing other duties as assigned.
5. Period of the contract is anticipated to run from: **April 2023 through October 2023.**
6. Contractor will be required to have a current MSHA annual training.



**EXHIBIT B**
(COMPENSATION)

Compensation for services defined in Exhibit A will be provided as follows:

1. Pay will be determined by the number of days that the operator is working onsite. This will be paid at a rate of **$660/ day**.
2. No "on-site" per diem is paid on this contract as Red Dog will provide all site lodging and meals at the mine camp. Per diem for travels days **($50)** will be provided and must be submitted via invoice along with an expense.
3. The Contractor will be responsible for booking flights and lodging for the travel to and from Anchorage. These expenses will be initially paid by the Contractor and submitted for reimbursement by the Company. Prudence in managing the cost of these expenses will be necessary. Excessive and unnecessary costs will not be reimbursed.
4. Mileage and expenses to arrive at and return from the home airport are the responsibility of the Contractor.
5. The contractor will submit invoice to AP@linkan.biz, twice a month for days worked.
6. The contractor will be paid twice per month, per invoice. The number of day rates paid will be determined by the number of days worked onsite per schedule. Funds will be deposited by Direct Deposit.
7. The invoice terms are net 15.
8. Contractor is responsible for all taxes whether in the US or Canada.



**LINKAN ENGINEERING, LTD.**

Date:   April 24, 2023        By: _____

Quinn Westmoreland, President
2720 Ruby Vista Dr. Suite 101
Elko NV. 89801

CONTRACTOR

Date:   April 24, 2023        By: _____

Chase Smith

# Exhibit 2

October 2, 2023 Independent Contractor Agreement



## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement entered into effective this **02 October 2023** (the "Effective Date") and is executed by and between Linkan Engineering Ltd, a Nevada professional corporation (the "Company"), and **Chase Smith** ("Contractor") and is based on the following facts:

A. Company provides professional engineering services to mining companies. Company has a need for an experienced water treatment plant operator to supervise a temporary water treatment plant for one of its clients.

B. Contractor is trained in providing such services and is knowledgeable in the services Company requires for this particular job and client; and

C. The parties desire to enter into this Agreement in order to set forth their respective rights and duties and to provide a full statement of the Contractor's responsibilities.

D. This engagement letter is valid through end of business on: December 31, 2023

NOW, THEREFORE, in consideration of the mutual promises and covenants of the parties as herein contained, the parties hereto agree, and contract as follows:

1. **SERVICES PROVIDED** The services to be provided by Contractor are set forth on Exhibit A, which is attached hereto and is incorporated herein by reference and which services are referred to herein as the "Services."

2. **ASSIGNMENT** Company and Contractor agree that they are entering into this Agreement due to the Contractor's specialized skill and knowledge regarding the Services. Accordingly, the performance of the Services is non-assignable and personal to the Contractor.

3. **CONSIDERATION** As consideration for this Agreement, Company agrees to pay Contractor in accordance with the fee schedule set forth in Exhibit B attached hereto and incorporated herein by reference. The contractor agrees to accept the fees referenced in Exhibit B as full and complete payment for all services rendered on behalf of the Company.

4. **TERM** This Agreement shall continue in effect for the period necessary for the Contractor to provide the Services to the Company's client unless terminated sooner pursuant to the provisions of this Agreement.

5. **TERMINATION**

   A. Termination without Cause. This Agreement is terminable without cause by either party upon twenty-one (21) calendar days prior written notice to the other party.

   B. Termination for Cause. Either party shall have the right to immediately terminate this Agreement at any time, upon five (5) days prior written notice of the occurrence of any material breach of this Agreement. If the breaching party fails to cure the material breach within the five (5)- day notice period, this Agreement



shall automatically terminate at the end of the five (5)-day notice period, notwithstanding any other provision in this Agreement.

C. Client Rejection of Contractor. The Independent Contractor is being hired to provide services to the Company's mining clients. In the event that Client deems Contractor's services are not needed, the Contractor is not qualified for the work, the Contractor fails Client-required drug testing, or the Contractor has violated Client "Cardinal Rule" safety protocols, the Contractor may be terminated for cause immediately.

6. **INSURANCE** Contractor will be covered by Company's workers compensation insurance as required by Nevada law for any injury incurred by Contractor while providing the Services for Company's clients.

7. **INDEPENDENT CONTRACTOR** In the performance of the work, duties, and obligations of Contractor under this Agreement, it is mutually understood and agreed that Contractor shall at all times be acting and performing as an independent contractor. Nothing in this Agreement shall be construed to create a employer-employee, or master-servant relationship. The Company enters into this Agreement based on Contractor's demonstrated ability to accomplish the objectives described herein. Contractor shall not be eligible to participate in any benefit programs that the Company now or hereafter maintains for its employees and, to the extent Contractor was to become eligible to participate in any such benefit program, Contractor hereby waives any such right. The parties agree that the relationship between the parties is that of an independent contractor for all purposes and not employer and employee. Company will not reimburse Contractor for any expenses incurred by Contractor in connection with the performance of Services hereunder, except as otherwise agreed to by Company. For all purposes, including, but not limited to, Medicare and Social Security taxes, the Federal Unemployment Tax Act (FUTA), income tax withholding and any and all other federal, state, and local laws, rules, and regulations Contractor, shall be treated as an independent contractor and not as an employee with respect to Company.

8. **CONFIDENTIAL, PROPRIETARY AND PERSONNEL INFORMATION** Contractor shall maintain in strict confidence and shall use and disclose only as authorized by Company, all information of a confidential or competitively sensitive or proprietary nature or concerning any of Company's business that Contractor receives in connection with the performance of Services. Company shall take reasonable steps to identify for the benefit of Contractor any information of a competitively sensitive or proprietary nature, including by using confidentiality notices in written material where appropriate.

The restrictions described in this Section shall not be construed to apply to (1) information generally available to the public; (2) information released by Company generally without restriction; (3) information independently developed or acquired by Contractor without reliance in any way on other protected information of Company; or (4) information approved for the use and disclosure of Contractor without



restriction. Notwithstanding the foregoing restrictions, Contractor may use and disclose any information to the extent required by an order of any court or other government authority or as necessary to protect their interest in this Agreement, but in each case only after Company has been so notified and has had the opportunity to obtain reasonable protection for such information in connection with such disclosure.

Non-Solicitation of Customers and Employees. Contractor agrees and for 12 months after my contract termination, I will not directly or indirectly, on behalf of myself or in conjunction with any other person or entity: solicit or accept business from any Linkan Engineering Customer.

Contractor agrees not to hire, solicit, recruit, induce, or attempt to hire, solicit, recruit, or induce any employee or independent contractor of the Company, who worked for the Company during the 6 months preceding my employment termination, to work for me or my new employer.

9. **INDEMNIFICATION** The parties hereby indemnify and agree to hold each other harmless from and against any and all claims, demands, and actions, and any liabilities, damages, or expenses resulting therefrom, including court costs and reasonable attorney fees, arising as a result of its own negligence or wrongdoing. Each party agrees to give the other party prompt notice of any such claim, demand, or action and shall, to the extent such party is not adversely affected; cooperate fully with the other party in defense and settlement of said claim, demand, or action.

10. **APPLICABLE LAW/ARBITRATION** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Nevada. Any claim or controversy arising out of, or relating in any way to, this Agreement or to the breach thereof, which cannot be resolved by the parties or their legal representatives in good faith discussions shall be determined exclusively by mandatory, binding arbitration conducted in Elko, Nevada pursuant to the Nevada Uniform Arbitration Act of 2000 (NRS 38.276 et seq. – the "Act"). In the event any such dispute is not first resolved between them, the Parties shall by agreement select one (1) person as arbitrator who has substantial experience in the area(s) of the disputed issue(s). If they cannot agree upon an arbitrator, either party may apply Page 4 pursuant to NRS 33.226 to the Third Judicial District Court of the State of Nevada in Elko County to appoint an arbitrator. The arbitrator shall have all of the powers set forth in the Act and shall enter an award at the conclusion of the proceedings, including an award of reasonable attorney's fees and costs to the prevailing party. In no event, however, may the award include any tort or punitive damages. The arbitrator's fee and the cost of the proceeding itself may be divided equally between the parties or the arbitrator may award all or any part of the fee and cost of the proceeding to either party in his/her discretion.

11. **MISCELLANEOUS**

    A.  Sections 6 through 10 shall survive the termination of this Agreement.



B. This Agreement shall constitute the entire written agreement between the parties and shall supersede any and all agreements or understandings in effect between the parties hereto. This Agreement may not be amended or modified except by written agreement executed by both parties.

C. If any provision of this Agreement is found, held, or deemed to be void, unlawful or unenforceable under any applicable statute or other controlling law, the remainder of this Agreement shall continue in full force and effect.

D. In any legal action, arbitration, or other proceeding brought to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

E. No breach of any provision hereof can be waived unless in writing. Waiver of any breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same, or any other provision.

F. Any notice required or permitted under this Agreement shall be in writing and sent to the other party by first class mail at the address provided below, or to such other address as a party hereto may specify in writing.

G. Contractor acknowledges that Contractor has had the opportunity to consult legal counsel in regard to this Agreement, that Contractor has read and understands this Agreement, that Contractor is fully aware of its legal effect, and that Contractor has entered into it freely and voluntarily and based on Contractor's own judgment and not on any representations or promises other than those contained in this Agreement.

H. This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same instrument

**LINKAN ENGINEERING, LTD.**



Date:  October 02, 2023          By:_____

                                    Teryn Faiman, Human Resources
                                    2720 Ruby Vista Dr. Suite 101
                                    Elko NV. 89801

**CONTRACTOR**

Date:                    By:          _____

                                      Chase Smith



**EXHIBIT A**
(SERVICES)

Contractor will provide the following services under this contract:

1.  Contractor will provide services as a water treatment plant operator in accordance with Company's contract with Albemarle.
2.  Contractor will fulfill the rotating assignment to operate the water treatment plant on (12 hours per day) 15 days on / 13 days off. Contractor acknowledges that they are on a team of four operators working coordinated schedules to provide 24/7/365 coverage to the plant.  Extra time outside of the 12-hour shift may be required to accommodate client safety/daily meeting requirements and any emergencies that might arise with the plant. Coordination with other independent contractors will be required to provide the coverage needed.
3.  Hours worked will be reported including travel time before and after rotation (no greater than 12 hours per day for travel to and from Albemarle
4.  Perform assignments as requested by Water Treatment Supervisor such as:
    a.  Generating required reports and required inspections.
    b.  Track all operational parameters and issue regular reports to the Linkan Project Manager.
    c.  Communicating with all levels of Linkan management and personnel.
    d.  Knowledge of proper chemical handling.
    e.  Monitoring plant conditions: formulating and implementing adjustments based on scaling components to protect plant equipment.
    f.  Identifying and mitigating hazards.
    g.  Anticipate, plan, and execute preventative maintenance on plant equipment.
    h.  Interface daily with Mine personnel.
    i.  Execute all work in compliance with MSHA safety requirements.
    j.  Assure that work is completed in accordance with approved Standard Operating Parameters (SOPs).
    k.  Performing other duties as assigned.
5.  The period of the contract is anticipated to run from: November 2023 through May 2024. There is the possibility of working in October in preparation for the project. Opportunities may be offered by the Project manager.
6.  Contractor will be required to have a current MSHA annual training and complete online safety trainings that are required by the Albemarle site.



**EXHIBIT B**
(COMPENSATION)

Compensation for services defined in Exhibit A will be provided as follows:

1. Pay will be determined by the number of days that the operator is working onsite. This will be paid at a rate of $725/ day for days where a shift is completed. There will be pay for two travel days per rotation, one enroute to site and the other returning. Travel days will be paid as a half day or $362.5/day.
2. Per Diem for meals and incidentals are billed at $75/day for days onsite. Travel day per diem for meals and incidentals are billed at $40/day.
3. The Contractor will be responsible for booking flights to and from Albemarle. These expenses will be initially paid by the Contractor and submitted for reimbursement by the Company.
4. Lodging will be available to you while at site. If lodging is required during travel approval will be necessary prior to booking.
5. Mileage and expenses to arrive at and return from the home airport are the responsibility of the Contractor. Prudence in managing the cost of these expenses will be necessary. Excessive and unnecessary costs will not be reimbursed.
6. The invoice must be submitted in a timely, accurate manner. Please note the following invoicing requirements:
   a. Contractor will be paid per invoice. Invoices may be submitted as frequently as once per week. The number of day rates paid will be determined by the number of days worked onsite per schedule. Funds will be deposited by Direct Deposit.
   b. All invoices should only include dates of the same month. If a rotation includes dates from two different months, a separate invoice should be sent for the charges of each month.
   c. All invoices are Net 15 from date of receipt, however, for only the first invoice of the contract period the Company will make efforts to pay Net 7.
   d. Contractor should submit an invoice to [ap@linkan.biz](mailto:ap@linkan.biz) and should include the following:
      • Name and address.
      • Invoice number.
      • Linkan subcontract number.
      • Days worked, with specific dates.
      • All expenses should be added to invoice. Initial expenses will not be reimbursed until arrival on site, unless.
      • Travel per diem, if applicable.
      • Unit price and amount.
   e. Any missing or inaccurate information may cause a delay in payment.
   f. Excessive and unnecessary costs will not be reimbursed.
   g. If you are requested to purchase any materials for the project that you are working on, those charges need to be billed on a separate invoice. Approval is required prior to purchase.
   h. ***All invoices need to be sent as a single PDF to [ap@linkan.biz](mailto:ap@linkan.biz).***
      Contractor is responsible for all taxes whether in the US or Canada.

outlook.office.com/n

**Linkan** ENGINEERING

Date:  October 02, 2023          By:_____

Teryn Faiman, Human Resources
2720 Ruby Vista Dr. Suite 101
Elko NV. 89801

CONTRACTOR

Date:                            By:_____

Chase Smith